

# UNITED STATES POSTAL SERVICE
# OFFICE OF INSPECTOR GENERAL
### MID-ATLANTIC AREA FIELD OFFICE
### 9201 EDGEWORTH DR, RM 2030
### CAPITOL HEIGHTS, MD 20790-9576

**CASE #:** 21INV00781      **CROSS REFERENCE #:** 21ALL11820

**TITLE:** (b)(6); (b)(7)(C) HIGHWAY CONTRACT
CARRIER_LANCASTER_17604

**CASE AGENT (if different from prepared by):**

## CLOSING MEMORANDUM

On December 1, 2020, the Amistad Project, an initiative of the Thomas More Society, held a press conference involving United States Postal Service (Postal Service) Highway Contractor Route (HCR) driver (b)(6); (b)(7)(C) alleged he transported completed mail-in ballots across state lines from Bethpage, NY, to Lancaster, PA on October 21, 2020. (b)(6); (b)(7)(C) explained he transported 26 gaylords from Bethpage, NY, to Harrisburg, PA. (b)(6); (b)(7)(C) claimed he was unable to unload his parcels destined for Harrisburg due to delays, and was instructed to finish his contract route in Lancaster, PA. (b)(6); (b)(7)(C) believed 24 of these gaylords contained mail-in ballots for PA. After arriving in Lancaster, (b)(6); (b)(7)(C) dropped off the trailer and went home for the day.

(b)(6); (b)(7)(C) stated he utilized trailer ID (b)(3):39 USC on October 21, 2020, but was unable to locate it the next day when he reported to work at Lancaster. In (b)(6); (b)(7)(C) sworn affidavit he claims he used trailer ID (b)(3) 39 USC from the end of September to October 21, 2020, and preferred that trailer. Additionally, (b)(6); (b)(7)(C) and media reports indicated his trailer transported approximately 250,000 to 300,000 ballots across state lines to PA, exclusively utilizing trailer ID (b)(3) USC However, in (b)(6); (b)(7)(C) sworn affidavit, he stated there could have been 250 to 7,500 ballots on trailer ID (b)(3):39 USC located within gaylords.

A joint investigation between the United Stated Postal Service, Office of the Inspector General (USPS-OIG), United States Postal Inspection Service (USPIS), and the Federal Bureau of Investigation (FBI), conducted over twenty (20) witness interviews and reviewed Postal Service transportation databases, which revealed (b)(6); (b)(7)(C) used approximately six (6) different trailers in the month of October 2020 (Exhibit 1). On October 21st, (b)(6); (b)(7)(C) actually utilized trailer ID (b)(3):39 USC and not (b)(3):39 USC Trailer ID (b)(3):39 USC is the trailer (b)(6); (b)(7)(C) alleged disappeared. (b)(6); (b)(7)(C) subsequently utilized trailer ID (b)(3) 39 USC on October 22, 2020, with no incident.

Page 1

**RESTRICTED INFORMATION**    This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

On October 20th through October 22nd, trailer ID [(b)(3):39 USC] was utilized for a Postal Service route starting in Seminole, FL, stopping in Harrisburg, PA, and ending in Philadelphia, PA. As of December 08, 2020, all trailers mentioned in this report, to include [(b)(3) 39 USC] were accounted for, never have been reported missing, and are currently transporting mail for the Postal Service.

A review of the Global Positioning System (GPS) date and time information confirm [(b)(6); (b)(7)(C)] used trailer ID [(b)(3):39 USC] on October 21st, and not ID [(b)(3):39 USC] Trailer ID [(b)(3):39 USC] is the trailer [(b)(6), (b)(7)(C)] alleged the ballots disappeared. Trailer data records pertaining to the mail contents of trailer ID [(b)(3):39 USC 410] which is the trailer [(b)(6), (b)(7)(C)] utilized on October 21, 2020, indicate most, if not all the mail contents were packages, not letters or ballots. Investigators confirmed data records indicated all mail contents were properly transported, accounted for, and processed.

Investigators conducted numerous interviews with Postal Service employees working on October 21st and October 22nd, who were associated with the inbound/outbound processing of trailer ID [(b)(3) 39 USC 410] None of the employees interviewed were able to corroborate [(b)(6); (b)(7)(C)] allegation. Multiple Postal Service employees recall seeing less than approximately one hundred (100) ballots the entire election season and stated they would notify a supervisor if they saw ballots. No Postal Service employee reported seeing more than 100 ballots on a single day. In addition, Postal Service employees working on October 21st could not recall directing [(b)(6); (b)(7)(C)] to proceed to Lancaster, as he stated in his allegation.

In an attempt to identify a source responsible for delivering a large volume of ballots through Bethpage, NY, to Pennsylvania on October 21st, investigating agents discovered ballot printing contractor Phoenix Graphics. Phoenix Graphics is based out of Rochester, NY, and was responsible for producing general election ballots for Philadelphia and Chester Counties, Pennsylvania. Phoenix Graphics provided six-hundred and fifty thousand (650,000) ballots for PA. However, these ballots were either driven by Phoenix Graphics directly to their respective election office in PA, or entered into the Postal Service mail-stream in Rochester, NY.

[(b)(6); (b)(7)(C)]

On April 28, 2021, the OIG and FBI interviewed [(b)(6); (b)(7)(C)]
[(b)(6); (b)(7)(C)]

Page 2

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

(b)(6); (b)(7)(C)

Continuing on the same date, the OIG and FBI interviewed (b)(6), (b)(7)(C)
(b)(6); (b)(7)(C)

On January 14, 2022, the OIG received (b)(6), (b)(7)(C)
(b)(6), (Exhibit 8). Upon review, (b)(6), (b)(7)(C) did not reveal any
substantial investigative leads justifying any further involvement by the OIG. (b)(6), (b)(7)(C)
(b)(6); (b)(7)(C)

The above joint investigation could not corroborate (b)(6); (b)(7)(C) allegation of missing
ballots. The investigation is complete and submitted for closure.

**Exhibits:**

1. ROI (b)(6); (b)(7)(C) HIGHWAY CONTRACT CARRIER, LANCASTER, PA 17604

2. OD-PA CRIME STOPPERS TIP-1297

        Adobe Acrobat
        Document
   a.

3. OD-PA CRIME STOPPERS TIP-1040

        Adobe Acrobat
        Document
   a.

4. OD-PA CRIME STOPPERS TIP-1049

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.



Adobe Acrobat
Document
a.

5. OD-PA CRIME STOPPERS TIP 107

Adobe Acrobat
Document
a.

6. OD-MOI-(b)(6); (b)(7)(C) interview 04.28.21

Adobe Acrobat
Document
a.

7. OD-MOI-(b)(6); (b)(7)(C) interview 04.28.21

Adobe Acrobat
Document
a.

8. OD-EMAIL SENT (b)(6); (b)(7)(C)
01.13.2022

Adobe Acrobat
Document
a.

RESTRICTED INFORMATION        This report is furnished on an official need to know basis and must be protected from
dissemination which may compromise the best interests of the U.S. Postal Service Office of
Inspector General. This report shall not be released in response to a Freedom of Information
Act or Privacy Act request or disseminated to other parties without prior consultation with the
Office of Inspector General. Unauthorized release may result in criminal prosecution.

Page 5

**RESTRICTED INFORMATION**

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.



# UNITED STATES POSTAL SERVICE
# OFFICE OF INSPECTOR GENERAL
### EASTERN AREA FIELD OFFICE
### 1000 WEST VALLEY ROAD ROOM 167
### SOUTHEASTERN, PA 19399-9998

**CASE #: 21INV00781**          **CROSS REFERENCE #: 21ALL11820**

**TITLE:** (b)(6), (b)(7)(C) HIGHWAY CONTRACT
CARRIER_LANCASTER_17604

**CASE AGENT (if different from prepared by):**

## REPORT OF INVESTIGATION

**PERIOD COVERED: FROM** December 2, 2020 **TO** February 19, 2021

**STATUS OF CASE:** Referred to Prosecutor's Office

**JOINT AGENCIES:**
UNITED STATES POSTAL INSPECTION SERVICE (IS)

FEDERAL BUREAU OF INVESTIGATION (FBI)

**DISTRIBUTION:**
REFERRED TO THE EASTERN DISTRICT OF PENNSYLVANIA, DEPARTMENT OF
JUSTICE (EDPA DOJ)

(b)(6), (b)(7)(C)          CHIEF - CRIMINAL DIVISION

**PREPARED BY: SPECIAL AGENT** (b)(6), (b)(7)(C)          **DATE: 3/24/2021**

Page 1

**RESTRICTED INFORMATION**          This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

# TABLE OF CONTENTS

I.     PREDICATION

II.    SYNOPSIS

III.   BACKGROUND/SUBJECT IDENTIFICATION

IV.    DETAILS

V.     EXHIBITS

RESTRICTED INFORMATION    This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

## I. PREDICATION

On December 1, 2020, the Amistad Project, an initiative of the Thomas More Society, held a press conference involving USPS Highway Contractor Route (HCR) driver [(b)(6); (b)(7)(C)] alleged he transported completed mail-in ballots across state lines from Bethpage, NY, to Lancaster, PA on October 21, 2020. [(b)(6); (b)(7)(C)] explained he transported 26 gaylords from Bethpage, NY, to Harrisburg, PA. [(b)(6); (b)(7)(C)] was unable to unload his parcels destined for Harrisburg due to delays, and was instructed to finish his contract route in Lancaster, PA. [(b)(6); (b)(7)(C)] believed 24 of these gaylords contained mail-in ballots for PA. After arriving in Lancaster, [(b)(6); (b)(7)(C)] dropped off the trailer and went home for the day.

[(b)(6); (b)(7)(C)] stated he utilized trailer ID [(b)(3):39 USC] on October 21st but was unable to locate it the next day when he reported to work at Lancaster. [(b)(6); (b)(7)(C)] stated on several occasions he exclusively used trailer ID [(b)(3):39 USC] and preferred that trailer.

[(b)(6); (b)(7)(C)] and Media reports indicate his trailer transported approximately 250,000 to 300,000 ballots across state lines to PA, exclusively utilizing trailer ID [(b)(3):39 USC]. In [(b)(6); (b)(7)(C)] sworn affidavit, he states there could have been 250 to 7,500 ballots on trailer ID [(b)(3):39 USC] located within gaylords.

## II. SYNOPSIS

A joint investigation between the United Stated Postal Service, Office of the Inspector General (USPS-OIG), Inspection Service (IS) and the Federal Bureau of Investigation (FBI), to include more than twenty (20) witness interviews and a review of USPS transportation databases, revealed [(b)(6); (b)(7)(C)] used approximately six (6) different trailers in the month of October 2020. On October 21st, [(b)(6); (b)(7)(C)] actually utilized trailer ID [(b)(3):39 USC] and not [(b)(3):39 USC]. [(b)(6); (b)(7)(C)] subsequently utilized trailer ID [(b)(3):39 USC] on October 22, 2020, with no incident.

On October 20th through October 22nd, trailer ID [(b)(3):39 USC] was utilized for a USPS route starting in Seminole, FL, stopping in Harrisburg, PA, and ending in Philadelphia, PA. All trailers mentioned in this report, to include [(b)(3):39 USC] are accounted for, never have been reported missing, and are currently transporting mail for the USPS.

The Global Positioning System (GPS) date and time information for October 21st, for trailer ID [(b)(3):39 USC] corroborate with [(b)(6); (b)(7)(C)] allegation timeline. The GPS information obtained from trailer ID [(b)(3):39 USC] does not corroborate with [(b)(6); (b)(7)(C)] allegation.

Page 3

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

Trailer data records pertaining to the mail contents of trailer ID [(b)(3):39 USC 410] indicate most, if not all the mail contents were packages, not letters. Confirmed data records indicate all mail contents were properly transported, accounted for, and processed.

All conversations with Postal employees working on October 21st and October 22nd, associated with the inbound/outbound processing of trailer ID [(b)(3):39 USC 410] do not corroborate with [(b)(6); (b)(7)(C)] allegation. Some employees remember seeing less then approximately one hundred (100) ballots the entire election season and stated they would notify a supervisor accordingly if they did see ballots. No employee reported seeing more than 100 ballots on a single day.

Postal employees working on October 21st cannot recall telling [(b)(6); (b)(7)(C)] to proceed to Lancaster.

In an attempt to identify a source responsible for delivering a large volume of ballots through Bethpage, NY, to Pennsylvania on October 21st, investigating agents discovered ballot printing contractor Phoenix Graphics, Rochester, NY, produced general election ballots for Philadelphia and Chester Counties, Pennsylvania. Phoenix Graphics provided six-hundred and fifty thousand (650,000) ballots for PA. However, these ballots were either driven by Phoenix Graphics directly to respective election office in PA or entered into the mail-stream in Rochester, NY.


## III. BACKGROUND/SUBJECT IDENTIFICATION

### BACKGROUND:

The USPS utilizes several contract tractor trailer carriers/companies to transport mail on several routes within the Continental United States (CONUS). These routes are referred to as Highway Contractor Routes (HCR) and are assigned route numbers and segments. USPS transportation personnel utilize these companies to move mail as efficiently as possible within CONUS. The contracting company hires the HCR driver and pays them accordingly. The two (2) HCR companies involved in this investigation are Eagle Express Lanes and Postal Fleet Services.

USPS "mail" can be itemized into Priority Mail Express, Priority Mail, First-Class Mail, First-Class package service, USPS Retail Ground, and Media mail (Descriptions). For simplicity, "Parcels," are considered "Packages," and "Letters" are considered first-class mail. Election ballots are first-class mail.

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

The USPS utilizes Processing and Distribution Centers (P&DC) located throughout the country to process each mail item accordingly and has specialized machines to do so. These machines either process parcels or letters. Between these P&DCs, HCR drivers and less frequently, Postal Vehicle Service (PVS) drivers (Postal employees), are utilized to move the mail. HCR and PVS drivers are issued unique IDs that can be scanned by Postal personnel. Most, if not all trailers, contain a GPS device and a unique trailer ID (Van ID) that correlates with a barcode on the trailer itself.

Inbound and outbound trailers are processed accordingly by "Postal expediters" and "mail-handlers" at P&DCs. These employees utilize a unique Employee Identification Number (EIN) assigned to them. They use the EIN to log into a portable scanner that allows these events to be recorded into Postal databases. For all inbound/outbound traffic, expediters scan the barcode of the tractor driver ID, trailer, and trailer seal. The seal is located on the door of the trailer. The seals are used to ensure the contents of the trailer have not been compromised during transit. If the expediter believes the seal is compromised, the IS is notified immediately. If a trailer has not been accounted for or missing, the IS along with local Law Enforcement (LE) are notified.

Postal mail-handlers load/unload mail from the trailer. At times, the mail-handler may work alongside the tractor trailer driver to make sure the mail contents are positioned correctly within the trailer. Most parcel items are stored in Gaylords and letters in All-Purpose Containers (APC). Gaylords are cardboard containers that sit on a 4'x 4' base that can be approximately four (4) or seven (7) feet high. Most if not all Gaylords are assigned a QR barcode. Once scanned by the mail-handler, the gaylord barcode allows the mail-handler to determine where the gaylord should be located in the P&DC or if it needs to be redirected to another P&DC (handoff). APCs are wheeled aluminum 2' x 5' cages used to contain letters assorted in trays.

[b)(6); (b)(7)(C)] is an HCR driver for Eagle Express Lanes (aka Ten Roads Eagle, Eagle Express) assigned to two segments within USPS route [b)(3) 39] His route starts in Lancaster, PA, has a scheduled departure of 1:00 a.m., and makes its first stop in Bethpage, NY at approximately 5:00 a.m. This portion of the route is segment, [b)(3) 39] The second portion of this route is, [b)(3) 39] This segment departs Bethpage, NY at approximately 5:45 a.m., arrives in Harrisburg, PA at approximately at 10:45 a.m., and ends back in Lancaster at approximately 12:15 p.m.

HCR drivers are paid by hours driven and are allowed to receive late slips provided by Postal for legitimate reasons. These slips document additional hours for the driver. The issuance of these late slips relies on the HCR driver and Postal expediter to follow proper procedures. Note: a driver will not receive a late slip if she or he does not complete a delivery.

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

Segment [b)(3) 39] and [b)(3) 39] within route [b)(3) 39 USC 410] incorporates three (3) USPS P&DCs. The Bethpage and Lancaster P&DCs only process parcels, yet may receive a proportionally small number of letters due to having a Postal retail area co-located with the facility. The Harrisburg P&DC processes letters and parcels.

## SUBJECT:

[b)(6); (b)(7)(C)] Highway Contract Route (HCR) driver for Eagle Express Lines. (Eagle Express Lines).

Pennsylvania Criminal Intelligence Center (PaCIC) Biographical Data Sheet (Exhibit 1).

Springettsburgy Township Police Department (PD) incident reports for [b)(6); (b)(7)(C)] (Exhibit 2).

- [b)(6); (b)(7)(C)]
- Residence: [b)(6); (b)(7)(C)]
- Cellular Number: [b)(6); (b)(7)(C)]

## IV.   DETAILS

On December 1, 2020, during an Amistad Project press conference, [b)(6); (b)(7)(C)] stated that on October 21, 2020, he observed completed ballots being loaded onto his trailer in Bethpage, NY. According to [b)(6); (b)(7)(C)] these ballots had handwriting on the outside of them. [b)(6); (b)(7)(C)] stated he utilized a specific trailer ID [b)(3) 39 USC] to transport the mail that day to processing plants in Harrisburg and Lancaster. After arriving at the Harrisburg P&DC, [b)(6); (b)(7)(C)] stated he had to wait in the parking lot for approximately six hours without his trailer being unloaded. [b)(6); (b)(7)(C)] stated he was then instructed by a Postal transportation supervisor to leave Harrisburg, without being unloaded, and go to his next and final stop, Lancaster. When [b)(6); (b)(7)(C)] he arrived at Lancaster, he dropped his trailer and left for the day. When [b)(6); (b)(7)(C)] arrived for work the next day to pick up the trailer, he stated the aforementioned trailer, [b)(3) 39 USC] was missing.

Continuing on the same date, case agents were made aware [b)(6); (b)(7)(C)] completed and swore to an affidavit on November 26, 2020, to [b)(6); (b)(7)(C)] private investigator (Exhibit 3) In the affidavit, [b)(6); (b)(7)(C)] stated there were approximately 24 gaylords, measuring approximately 4ft by 5ft each, and were destined for Harrisburg. He stated there were two additional gaylords loaded in the nose of the trailer destined for Lancaster. [b)(6); (b)(7)(C)] could not estimate how many ballots were in the gaylords going to Harrisburg but said it could have been 250 to 7,500. Note: [b)(6); (b)(7)(C)] claimed through social media

RESTRICTED INFORMATION    This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

and press releases that his trailer (b)(3):39 USC 410 (e)(2) contained approximately 250,000 to 300,000 ballots.

On December 02, 2020, numerous Postal employees were interviewed at the Harrisburg P&DC to include the following (Exhibit 4):

- Harrisburg P&DC (b)(6); (b)(7)(C)
- Central PA District (b)(6); (b)(7)(C)
- (b)(6); (b)(7)(C)
- 
- 

The above-mentioned employees, which include high level management, could not corroborate (b)(6), (b)(7)(C) claim of 250 to 7,500 ballots transported on trailer ID (b)(3):39 USC A review of USPS databases showed that (b)(6), (b)(7)(C) did not use trailer ID (b)(3):39 USC on October 20th or 21st. (b)(6); (b)(7)(C) used trailer ID (b)(3):39 USC 410 Additionally, USPS data reported the gaylords (mail) that (b)(6); (b)(7)(C) did not deliver to Harrisburg, were eventually off-loaded and scanned in Lancaster on October 21st. The Lancaster-bound gaylords were processed locally while the gaylords intended for Harrisburg were sent back to Harrisburg on new trailer ID (b)(3):39 Postal Fleet Services is the contracting company that manages trailer ID (b)(3):39 USC 410 and operates an evening route between Lancaster and Harrisburg daily.

Continuing on the same date, USPS Surface Transport Operations provided GPS information pertaining to trailer ID (b)(3):39 USC 410 on October 21st (Exhibit 5). The GPS information provided corroborates with (b)(6); (b)(7)(C) timeline.

Continuing on the same date, the OIG and IS interviewed USPS (b)(6); (b)(7)(C)
(b)(6); (b)(7)(C)

On December 03, 2020, the OIG attempted to contact (b)(6); (b)(7)(C) to schedule an interview. All attempts failed.

Continuing on the same date, the OIG and IS interviewed USPS (b)(6); (b)(7)(C)
(b)(6); (b)(7)(C)

Page 7

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

(b)(6); (b)(7)(C)

Continuing on the same date, the OIG and IS interviewed USPS (b)(6); (b)(7)(C)
(b)(6); (b)(7)(C)

Continuing on the same date, the OIG interviewed (b)(6); (b)(7)(C)
(b)(6); (b)(7)(C)

Continuing on the same date, the USPS-OIG, North East Area Field Office (NEAFO), interviewed several Postal employees that work at the Bethpage, NY P&DC. Interviewed Postal employees, which include (b)(6); (b)(7)(C) (b)(6); (b)(7)(C) did not corroborate (b)(6); (b)(7)(C) claim of ballots being located in the gaylords. All employees explained they only saw a handful of ballots the whole election season.

- (b)(6); (b)(7)(C)
-
-
-
-

Continuing on the same date, Lancaster P&DC (b)(6); (b)(7)(C) provided the election mail log for their facility (Exhibit 15). This log contains two types of election mail, Political Campaign Mail (PCM) and Official Election Mail (OEM). PCM are considered political advertisements (not ballots) and OEM include ballots. The aforementioned log contains an entry for OEM mail received by Lancaster's local Bulk Mail Entry Unit (BMEU). The BMEU mail intake is separate from the trailer operations. The log contains one (1) OEM entry for October 21st for the, "Camden, Co Board of Elec," for 46,233 mail pieces, at listed time, "2:00." A review of the log suggests the time would have been 2:00 a.m. "Camden, Co Board of Elec," when researched online, appears to be the Camden County, NJ BOE.

Page 8

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

Continuing on the same date, the OIG obtained copies of the Election Mail Log from the Harrisburg P&DC (Exhibit 16). None of the entries, specifically the volume of mail recorded on October 21st or 22nd, correspond with [b)(6); (b)(7)(C)] allegation.

On December 04, 2020, investigators attempted to contact [b)(6); (b)(7)(C)] to schedule an interview via phone and text. All attempts failed.

Continuing on the same date, the OIG was contacted by [b)(6); (b)(7)(C)] Eagle Express Lanes, [b)(6); (b)(7)(C)] He indicated [b)(6); (b)(7)(C)] cell phone number is [b)(6); (b)(7)(C)] [b)(6); (b)(7)(C)] It was explained [b)(6); (b)(7)(C)] has not worked since November 22nd.

Continuing on the same date, the OIG attempted to contact [b)(6); (b)(7)(C)] All attempts failed. [b)(6); (b)(7)(C)] is the private investigator [b)(6); (b)(7)(C)] utilized to swear his affidavit.

Continuing on the same date, the OIG contacted [b)(6); (b)(7)(C)] Special Council for the Thomas More Society, and asked if [b)(6); (b)(7)(C)] had legal representation. [b)(6);] indicated he would get back with investigators at a later time and indicated [b)(6); (b)(7)(C)] Director of the Amistad Project, may contact them.

Continuing on the same date, the FBI spoke with [b)(6); (b)(7)(C)] President of the London Center for Policy Research, regarding a possible meeting/interview with [b)(6); (b)(7)(C)] (Exhibit 17). [b)(6); (b)(7)(C)] indicated he wanted whistle-blower protection for his client and was hesitant to meet at the FBI Washington Field Office (WFO). A date and time for a potential meeting with [b)(6); (b)(7)(C)] could not be agreed upon. [b)(6);] said he would talk to [b)(6); (b)(7)(C)] the next morning around 7:30 a.m. and a meeting may be scheduled later in the day.

On December 04, 2020, [b)(6); (b)(7)(C)] sworn affidavit was received and filed in the Commonwealth Court of PA.

On December 5, 2020 agents from the OIG, FBI, and USPIS, interviewed [b)(6); (b)(7)(C)] (Exhibit 18). [b)(6); (b)(7)(C)] attorney (telephonically) and [b)(6);] were present during the interview. [b)(6); (b)(7)(C)]

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

On December 7, 2020, agents from the OIG and FBI interviewed (b)(6), (b)(7)(C)
(b)(6), (b)(7)(C)

On December 08, 2020, investigators from the OIG, IS, and FBI interviewed USPS
(b)(6); (b)(7)(C)

Continuing on same date, investigators from the OIG, IS, and FBI interviewed (b)(6); (b)(7)(C)
(b)(6); (b)(7)(C)

Page 10

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

(b)(6), (b)(7)(C)

Continuing on the same date, investigators from the OIG, IS, and FBI interviewed USPS
(b)(6), (b)(7)(C)

On December 09, 2020, investigators from the OIG, IS, and FBI interviewed (b)(6), (b)(7)(C)
(b)(6), (b)(7)(C)

Continuing on the same date, Eagle Express Lanes provided GPS data for trailer ID
(b)(3):39 USC (Exhibit 26). The GPS information provided does not corroborate with
(b)(6), (b)(7)(C) allegation. Trailer ID (b)(3):39 USC departed Seminole, FL around 9:00 a.m. on
October 20, 2020. GPS data provided indicate the morning of October 21st, trailer ID
(b)(3):39 USC was in North Carolina traveling northbound to Harrisburg, PA.

Continuing on the same date, investigators from the OIG, IS, and FBI interviewed USPS
(b)(6), (b)(7)(C)

On December 11, 2020, at approximately 9:53 a.m., (b)(6), (b)(7)(C) contacted the OIG
(Exhibit 28). (b)(6), (b)(7)(C)
(b)(6), (b)(7)(C)

Continuing on the same date, the Lancaster P&DC (b)(6), (b)(7)(C)
confirmed they have not received any reports of lost, stolen, or compromised trailers

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from
dissemination which may compromise the best interests of the U.S. Postal Service Office of
Inspector General. This report shall not be released in response to a Freedom of Information
Act or Privacy Act request or disseminated to other parties without prior consultation with the
Office of Inspector General. Unauthorized release may result in criminal prosecution.

within the last sixty (60) days. According to [(b)(6), (b)(7)(C)] all of their trailers are accounted for and a complete, "Yard," check is completed every eight (8) hours. The yard is the parking lot area for the tractor trailers.

Continuing on the same date, the OIG spoke with Eagle Express Lanes [(b)(6), (b)(7)(C)]
[(b)(6), (b)(7)(C)]

Continuing on the same date, the OIG spoke with [(b)(6); (b)(7)(C)] counsel for Phoenix Graphics Inc. (Exhibit 30). [(b)(6), (b)(7)(C)] explained Phoenix Graphics was a subcontractor for another printing company named ES&S. They provided four hundred and fifty thousand (450,000) ballots to ES&S for the Philadelphia Board of Elections (BOE). Phoenix Graphics Inc., held the sole contract for Chester County, PA BOE, and provided them two hundred thousand (200,000). [(b)(7)(C)] explained, but could not confirm, the ballots for both PA BOEs where most likely delivered to those respective locations by their delivery trucks, or entered in the mail stream locally in Rochester, NY. [(b)(6),] said his client's ballots should not have been associated with the Bethpage, NY allegation. [(b)(6), (b)(7)(C)] indicated he would contact his client and confirm the transportation of ballots at a later time.

On December 15, 2020, the OIG and IS interviewed USPS [(b)(6), (b)(7)(C)]
(Exhibit 31). [(b)(6); (b)(7)(C)]
[(b)(6),]

Continuing on the same date, [(b)(6), (b)(7)(C)]
[(b)(6); (b)(7)(C)]

Continuing on the same date, the OIG and IS interviewed USPS [(b)(6), (b)(7)(C)]
[(b)(6); (b)(7)(C)]

Continuing on the same date, the IS interviewed USPS [(b)(6); (b)(7)(C)]
[(b)(6); (b)(7)(C)]

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

(b)(6); (b)(7)(C)

On December 16, 2020, the OIG interviewed USPS (b)(6); (b)(7)(C)
(b)(6); (b)(7)(C)

On December 18, 2020, the OIG and IS finalized data associated with (b)(6); (b)(7)(C)
allegations from USPS databases (Exhibit 35). For simplicity, a visual representation of
this data was created (Exhibit 36). The OIG utilized a data-mining analyst to obtain and
confirm the data from two Postal databases, the (b)(3) 39 USC 410 (c)(2); (b)(6); (b)(7)(C); (b)(7)(E)
and (b)(3) 39 USC 410 (c)(2); (b)(6), (b)(7)(C); (b)(7)(E) are repositories for
scanner data captured at various places throughout the USPS transportation network.
The data obtained represents the following:

- (b)(6), (b)(7)(C) transported mail on 14 days in October 2020. Over the course of those 14
  days he utilized 6 different trailers. (See (b)(6), (b)(7)(C) **Trailers Tab – Exhibit 35** )

- On October 21, 2020 (b)(6), (b)(7)(C) utilized trailer ID (b)(3) 39 USC 410 (c)(2); (b)(7)(C) He departed the
  Lancaster P&DC at approximately 1:00 a.m. and drove to Bethpage, NY; arriving at
  approximately 4:18 a.m. At the Bethpage P&DC his trailer was unloaded. The trailer
  was then loaded with fourteen (14) 4FT Gaylords destined for the Lancaster P&DC,
  followed by twelve (12) 4FT Gaylords destined for the Harrisburg P&DC. The trailer
  was sealed at approximately 5:30 a.m. and (b)(6); (b)(7)(C) departed for Harrisburg, PA.
  There is no scan data available for the arrival/departure or loading/unloading at the
  Harrisburg P&DC because (b)(6), (b)(7)(C) never docked (unloaded) his
  trailer. (b)(6); (b)(7)(C) arrived to the Lancaster P&DC at approximately 4:15 p.m. The
  seal on the trailer matched the seal put on in Bethpage, NY. In order to access the
  mail destined for Lancaster, the 12 Gaylords destined for Harrisburg had to be
  removed from trailer (b)(3) 39 USC 410 Those same 12 Gaylords were then placed onto
  trailer (b)(3) 39 Trailer (b)(3) 39 departed the Lancaster P&DC at approximately 7:58
  p.m. on October 21. It was driven by Postal Fleet Services driver (b)(6); (b)(7)(C)
  (b)(6), arrived in Harrisburg at approximately 9:22 p.m. The trailer, including the 12
  Gaylords originally loaded in Bethpage, was unloaded in Harrisburg around 9:00
  a.m. on October 22. On October 21, trailer ID (b)(3):39 USC 410 (c)(2) was enroute to Harrisburg,
  PA from Seminole, FL, and had a final destination of Philadelphia,
  PA. (**Combination of Trl Scan Tab and Container Tab – Exhibit 35**)

- OIG analysts conducted an examination of a sampling of the parcels associated with
  the Gaylords loaded on (b)(3):39 USC 410 (c)(2) in Bethpage on October 21. Data and images
  captured by USPS mail processing equipment indicates the Gaylords contained

Page 13

RESTRICTED INFORMATION | This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

Priority Mail Parcels. **(Parcel Scan Data - Exhibit 35).** This review did not reveal the presence of first class mail or ballots.

- Based upon information captured by various USPS scanners, Investigators were able to identify eleven (11) individuals who had contact with the containers placed onto [(b)(6); (b)(7)(C)] trailer at Bethpage, NY on October 21. **(See Contact with Containers – Exhibit 35)**

- According to USPS [(b)(3) 39 USC 410 (c)(2); (b)(7)(C); (b)(7)(E)] [(b)(6); (b)(7)(C)] was issued a USPS ID badge from the Harrisburg P&DC on October 9, 2019. A query of the system was conducted for [(b)(6); (b)(7)(C)] assigned badge for the time period of October 20 – 22. [(b)(6); (b)(7)(C)] arrived to the HARRISBURG P&DC at approximately 9:12 a.m. on October 21 and swiped into the gate at the truck entrance. There are then several swipes into and out of the building between 2:44 p.m. and 2:54 p.m. [(b)(6);] departed for Lancaster sometime after his last swipe out of the building at 2:54 p.m. **(See Badge Swipe Tab – Exhibit 35)**

On December 23, 2020, the FBI and IS contacted [(b)(6); (b)(7)(C)] to clarify the purpose of a form 5500 (Contract Route Irregularity Report) and the meaning of a, [(b)(3) 39 USC] entered by [(b)(6);] This [(b)(3) 39] was referenced in the transportation record for trailer ID [(b)(3) 39 USC 410] on October 21st. [(b)(6);] explained [(b)(3) 39] indicates an omitted trip which would be common in this case since [(b)(6); (b)(7)(C)] trailer never docked in Harrisburg. [(b)(6);] does not recall entering the code or conversing with [(b)(6); (b)(7)(C)] explained based upon the unusually high volume of activity this Fall, and the equally high number of late trailers, he wouldn't be able to recall a specific event from October.

Continuing on the same date, the OIG reviewed the election mail log from Bethpage (Exhibit 37). OIG, NEAFO SAs obtained a copy of the entire election mail log provided by Postal management. Note: this log differs from Lancaster and Harrisburg, containing images of the election mail itself rather than a summary log. Bethpage's log contained approximately one-hundred and fifty (150) images of ballots for the entire election season. NEAFO SAs also provided a copy of the contract route vehicle record given to [(b)(6); (b)(7)(C)] when he left Bethpage on the 21st (Exhibit 38). This record matches the record obtained by investigators on December 3rd in Lancaster. All efforts to obtain the summary log from Bethpage were unsuccessful.

On February 19, 2021, the OIG contacted [(b)(6); (b)(7)(C)] counsel for Eagle Express Lanes, regarding the current status of [(b)(6); (b)(7)(C)] employment. Eagle Express Lanes is also known as 10 Roads Express, a division of Salmon Companies. [(b)(6); (b)(7)(C)] explained [(b)(6); (b)(7)(C)] has not been in contact with the company since November 29, 2020 and has failed to provide a Family and Medical Leave Act (FMLA) certification

Page 14

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

justifying his leave/absence. Subsequently, they documented [(b)(6); (b)(7)(C)] lack of response as a voluntary resignation, effective December 23, 2020 (Exhibit 39).

## V.    EXHIBITS

1. EX1-OD-[(b)(6); (b)(7)(C)] - PACIC REPORT.pdf
2. EX2-OD-Springettsburg_Township_Police_incident_reports_Jan_2013_-_Dec_2020-COMBINED.pdf
3. EX3-OD-AFFIDAVIT [(b)(6); (b)(7)(C)] FROM COMMONWEALTH COURT OF PA RECEIVED ON 12.04.2020 .pdf
4. EX4-MOI-HBG P&DC POSTAL MGMT-Unknown_LANCASTER_17604-1.pdf
5. EX5-OD-GPS MOVEMENT FOR TRAILER ID 10R750198 - 10.21.2020.xls
6. EX6-MOI-[(b)(6); (b)(7)(C)] LANCASTER-Unknown_LANCASTER_17604-12.03.20.pdf
7. EX7-MOI-[(b)(6); (b)(7)(C)] HARRISBURG-Unknown_LANCASTER_17604-12.03.20.pdf
8. EX8-MOI-[(b)(6); (b)(7)(C)] LANCASTER_17604-12.03.20.pdf
9. EX9-MOI-[(b)(6); (b)(7)(C)] Unknown_LANCASTER_17604-12.03.20.pdf
10. EX10-OD-MOI-[(b)(6); (b)(7)(C)] Unknown_LANCASTER_17604-12.03.20.pdf
11. EX11-OD-MOI-[(b)(6); (b)(7)(C)] Unknown_LANCASTER_17604-12.03.20.pdf
12. EX12-OD-MOI-[(b)(6); (b)(7)(C)] Unknown_LANCASTER_17604-12.03.20.pdf
13. EX13-OD-MOI-[(b)(6); (b)(7)(C)] Unknown_LANCASTER_17604-12.02.20.pdf
14. EX14-OD-MOI-[(b)(6); (b)(7)(C)] Unknown_LANCASTER_17604-12.03.20.pdf
15. EX15-OD-LANCASTER- ELCTION MAIL LOG.pdf
16. EX16-OD-HBG ELCTION MAIL LOG.pdf
17. EX17-OD-MOI-[(b)(6); (b)(7)(C)] 12.04.20.pdf
18. EX18-MOI-[(b)(6); (b)(7)(C)] Unknown_LANCASTER_17604-12.05.2020.docx
19. EX19-OD - [(b)(6); (b)(7)(C)] IMAGES FROM INTERVIEW.pdf
20. EX20-MOI-[(b)(6); (b)(7)(C)] Unknown_LANCASTER_17604-12.07.2020.docx
21. EX21-OD-COMPLAINT FROM [(b)(6); (b)(7)(C)] VOICEMAIL.mp3
22. EX22-OD-MOI-[(b)(6); (b)(7)(C)] HARRISBURG-Unknown_LANCASTER_17604-12.08.20.pdf
23. EX23-OD-MOI-[(b)(6); (b)(7)(C)] INTERVIEW - COMBINED - 12.08.2020.pdf
24. EX24-MOI-[(b)(6); (b)(7)(C)] Unknown_LANCASTER_17604-12.08.2020.pdf
25. EX25-OD-MOI-[(b)(6); (b)(7)(C)] second_interview

Page 15

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

26. EX26-OD-MAP OF GPS CORDINATES FOR 10R1440 10.21-22.2020-[(b)(6), (b)(7)(C)] Highway Contract Carrier_LANCASTER_17604.pdf

27. EX27-OD-MOI-[(b)(6); (b)(7)(C)] 12.09.20.pdf

28. EX28-MOA-[(b)(6); (b)(7)(C)]
[(b)(6);] LANCASTER_17604 - 12.11.2020.pdf

29. EX29-MOI-[(b)(6); (b)(7)(C)] Unknown_LANCASTER_17604-12.11.20.pdf

30. EX30-MOI-[(b)(6); (b)(7)(C)] PHOENIX GRAPHICS-Unknown_LANCASTER_17604-12.11.20.pdf

31. EX31-MOI-[(b)(6); (b)(7)(C)] Unknown_LANCASTER_17604-12.15.20.pdf

32. EX32-MOI-[(b)(6); (b)(7)(C)] Unknown_LANCASTER_17604-12.15.20.pdf

33. EX33-OD-MOI -[(b)(6); (b)(7)(C)] LANCASTER.pdf

34. EX34-OD-MOI-[(b)(6); (b)(7)(C)] Unknown_LANCASTER_17604-12.16.20.pdf

35. EX35-OD-[(b)(6); (b)(7)(C)] Data-FINAL.xlsx

36. EX36-OD-[(b)(6);] route 10212020.pptx

37. EX37-OD-ELECTION MAIL LOG FROM BETHPAGE NY-CONSOLIDATED 2.pdf

38. EX38-OD-PS5398-A-CONTRACT ROUTE VEHICLE RECORD FROM BETHPAGE, NY-10.21.2020-0530HRS.pdf

39. SD-RESIGNATION-[(b)(6); (b)(7)(C)] Highway Contract Carrier_LANCASTER_17604.pdf

Page 16

**RESTRICTED INFORMATION**

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.



# UNITED STATES POSTAL SERVICE
# OFFICE OF INSPECTOR GENERAL
EASTERN AREA FIELD OFFICE
51 PENNWOOD PLACE, SUITE 300
WARRENDALE, PA 15086

December 29, 2020

United States Attorney Office
601 Market Street
Philadelphia, PA 19106

ATTN:
(b)(6); (b)(7)(C) CHIEF - CRIMINAL DIVISION

SUBJECT:
(b)(6); (b)(7)(C) HIGHWAY CONTRACT
CARRIER_LANCASTER_17604

The United States Postal Service - Office of Inspector General (USPS-OIG), Office of Investigations, Eastern Area Field Office, recently completed an investigation of (b)(6), (b)(6); (b)(7)(C)

A joint investigation between the OIG, Inspection Service (IS), and the Federal Bureau of Investigation (FBI), revealed the Postal Service accounted for the contents of the mail stream in question by (b)(6); (b)(7)(C) Investigative efforts into (b)(6); (b)(7)(C) public and sworn statements have not been corroborated.

Please contact Special Agent (SA) (b)(6); (b)(7)(C) directly if you have any questions or require additional documentation. He can be reached at (b)(6); (b)(7)(C)

Respectfully,
(b)(6); (b)(7)(C)

for
Kenneth Cleevely
Special Agent in Charge
Eastern Area Field Office



# UNITED STATES POSTAL SERVICE
## OFFICE OF INSPECTOR GENERAL
### EASTERN AREA FIELD OFFICE
1000 WEST VALLEY ROAD ROOM 167
SOUTHEASTERN, PA 19399-9998

**CASE #:** 21INV00781          **CROSS REFERENCE #:** 21ALL11820

**TITLE:** (b)(6); (b)(7)(C)                    HIGHWAY CONTRACT
CARRIER_LANCASTER_17604

**CASE AGENT (if different from prepared by):**

### REPORT OF INVESTIGATION

**PERIOD COVERED: FROM** December 2, 2020 **TO** December 23, 2020

**STATUS OF CASE:** Referred to Prosecutor's Office

**JOINT AGENCIES:**
UNITED STATES POSTAL INSPECTION SERVICE (IS)

FEDERAL BUREAU OF INVESTIGATION (FBI)

**DISTRIBUTION:**
REFERRED TO THE EASTERN DISTRICT OF PENNSYLVANIA, DEPARTMENT OF
JUSTICE (EDPA DOJ)

(b)(6); (b)(7)(C)                    CHIEF - CRIMINAL DIVISION

**PREPARED BY: SPECIAL AGENT** (b)(6); (b)(7)(C)          **DATE: 12/23/2020**

Page 1

RESTRICTED INFORMATION    This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

# TABLE OF CONTENTS

I.    PREDICATION

II.   SYNOPSIS

III.  BACKGROUND/SUBJECT IDENTIFICATION

IV.   DETAILS

V.    EXHIBITS

RESTRICTED INFORMATION | This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

# I.    PREDICATION

On December 1, 2020, the Amistad Project, an initiative of the Thomas More Society, held a press conference involving USPS Highway Contractor Route (HCR) driver [(b)(6); (b)(7)(C)] alleged he transported completed mail-in ballots across state lines from Bethpage, NY, to Lancaster, PA on October 21, 2020. [(b)(6); (b)(7)(C)] explained he transported 26 gaylords from Bethpage, NY, to Harrisburg, PA. [(b)(6); (b)(7)(C)] was unable to unload his parcels destined for Harrisburg due to delays, and was instructed to finish his contract route in Lancaster, PA. [(b)(6); (b)(7)(C)] believed 24 of these gaylords contained mail-in ballots for PA. After arriving in Lancaster, [(b)(6); (b)(7)(C)] dropped off the trailer and went home for the day.

[(b)(6); (b)(7)(C)] stated he utilized trailer ID [(b)(3) 39 USC] on October 21st but was unable to locate it the next day when he reported to work at Lancaster. [(b)(6); (b)(7)(C)] stated on several occasions he exclusively used trailer ID [(b)(3) 39 USC] and preferred that trailer.

[(b)(6); (b)(7)(C)] and Media reports indicate his trailer transported approximately 250,000 to 300,000 ballots across state lines to PA, exclusively utilizing trailer ID [(b)(3) 39 USC] In [(b)(6); (b)(7)(C)] sworn affidavit, he states there could have been 250 to 7,500 ballots on trailer ID [(b)(3) 39 USC 410 (c)(2)] located within gaylords.

# II.    SYNOPSIS

A joint investigation between the United Stated Postal Service, Office of the Inspector General (USPS-OIG), Inspection Service (IS) and the Federal Bureau of Investigation (FBI), to include more than twenty (20) witness interviews and a review of USPS transportation databases, revealed [(b)(6); (b)(7)(C)] used approximately six (6) different trailers in the month of October 2020.  On October 21st, [(b)(6); (b)(7)(C)] actually utilized trailer ID [(b)(3) 39 USC 410] and not [(b)(3) 39 USC] [(b)(6); (b)(7)(C)] subsequently utilized trailer ID [(b)(3) 39 USC 410 (c)(2)] on October 22nd with no incident.

On October 20th through October 22nd, trailer ID [(b)(3) 39 USC] was utilized for a USPS route starting in Seminole, FL, stopping in Harrisburg, PA, and ending in Philadelphia, PA.  All trailers mentioned in this report, to include [(b)(3) 39 USC] are accounted for, never have been reported missing, and are currently transporting mail for the USPS.

The Global Positioning System (GPS) date and time information for October 21st, for trailer ID [(b)(3) 39 USC 410] corroborate with [(b)(6); (b)(7)(C)] allegation timeline.  The GPS information obtained from trailer ID [(b)(3) 39 USC] does not corroborate with [(b)(6); (b)(7)(C)] allegation.  There is no official USPS documentation [(b)(6); (b)(7)(C)] utilized trailer ID [(b)(3) 39 USC 410 (c)(2)] on October 21st.

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General.  This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General.  Unauthorized release may result in criminal prosecution.

Trailer data records pertaining to the mail contents of trailer ID `(b)(3) 39 USC 410` indicate most, if not all the mail contents were packages, not letters. Confirmed data records indicate all mail contents where properly transported, accounted for, and processed.

All conversations with Postal employees working on October 21st and October 22nd, associated with the inbound/outbound processing of trailer ID `(b)(3) 39 USC 410` do not corroborate with `(b)(6); (b)(7)(C)` allegation. Some employees remember seeing less then approximately one hundred (100) ballots the entire election season and stated they would notify a supervisor accordingly if they did see ballots. No employees reported seeing more than 100 ballots on a single day.

Postal employees working on October 21st cannot recall telling `(b)(6); (b)(7)(C)` to proceed to Lancaster.

In an attempt to identify a source responsible for delivering a large volume of ballots through Bethpage, NY, to Pennsylvania on October 21st, investigating agents discovered ballot printing contractor Phoenix Graphics, Rochester, NY, produced general election ballots for Philadelphia and Chester Counties, Pennsylvania. Phoenix Graphics provided six-hundred and fifty thousand (650,000) ballots for PA. However, these ballots were either driven by Phoenix Graphics directly to respective election office in PA or entered into the mail-stream in Rochester, NY.

## III.    BACKGROUND/SUBJECT IDENTIFICATION

### BACKGROUND:

The USPS utilizes several contract tractor trailer carriers/companies to transport mail on several routes within the Continental United States (CONUS). These routes are referred to as Highway Contractor Routes (HCR) and are assigned route numbers and segments. USPS transportation personnel utilize these companies to move mail as efficiently as possible within CONUS. The contracting company hires the HCR driver and pays them accordingly. The two (2) HCR companies involved in this investigation are Eagle Express Lanes and Postal Fleet Services.

USPS "mail" can be itemized into Priority Mail Express, Priority Mail, First-Class Mail, First-Class package service, USPS Retail Ground, and Media mail (Descriptions). For simplicity, "Parcels," are considered "Packages," and "Letters" are considered first - class mail. Election ballots are first-class mail.

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

The USPS utilizes Processing and Distribution Centers (P&DC) located throughout the country to process each mail item accordingly and has specialized machines to do so. These machines either process parcels or letters. Between these P&DCs, HCR drivers and less frequently, Postal Vehicle Service (PVS) drivers (Postal employees), are utilized to move the mail. HCR and PVS drivers are issued unique IDs that can be scanned by Postal personnel. Most, if not all trailers, contain a GPS device and a unique trailer ID (Van ID) that correlates with a barcode on the trailer itself.

Inbound and outbound trailers are processed accordingly by "Postal expediters" and "mail-handlers" at P&DCs. These employees utilize a unique Employee Identification Number (EIN) assigned to them. They use the EIN to log into a portable scanner that allows these events to be recorded into Postal databases. For all inbound/outbound traffic, expediters scan the barcode of the tractor driver ID, trailer, and trailer seal. The seal is located on the door of the trailer. The seals are used to ensure the contents of the trailer have not been compromised during transit. If the expediter believes the seal is compromised, the IS is notified immediately. If a trailer has not been accounted for or missing, the IS along with local Law Enforcement (LE) are notified.

Postal mail-handlers load/unload mail from the trailer. At times, the mail-handler may work alongside the tractor trailer driver to make sure the mail contents are positioned correctly within the trailer. Most parcel items are stored in Gaylords and letters in All-Purpose Containers (APC). Gaylords are cardboard containers that sit on a 4'x 4' base that can be approximately four (4) or seven (7) feet high. Most if not all Gaylords are assigned a QR barcode. Once scanned by the mail-handler, the gaylord barcode allows the mail-handler to determine where the gaylord should be located in the P&DC or if it needs to be redirected to another P&DC (handoff). APCs are wheeled aluminum 2' x 5' cages used to contain letters assorted in trays.

(b)(6); (b)(7)(C) is an HCR driver for Eagle Express Lanes (aka Ten Roads Eagle, Eagle Express) assigned to two segments within USPS route (b)(3).39 USC 410 His route starts in Lancaster, PA, has a scheduled departure of 1:00 a.m., and makes its first stop in Bethpage, NY at approximately 5:00 a.m. This portion of the route is segment, (b)(3).39 USC 410 The second portion of this route is, (b)(3).39 This segment departs Bethpage, NY at approximately 5:45 a.m., arrives in Harrisburg, PA at approximately at 10:45 a.m., and ends back in Lancaster at approximately 12:15 p.m.

HCR drivers are paid by hours driven and are allowed to receive late slips provided by Postal for legitimate reasons. These slips document additional hours for the driver. The issuance of these late slips relies on the HCR driver and Postal expediter to follow proper procedures. Note: a driver will not receive a late slip if she or he does not complete a delivery.

Page 5

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

Segment [(b)(3)] and [(b)(6), (b)(7)(C)] within route [(b)(6), (b)(7)(C)] incorporates three (3) USPS P&DCs. The Bethpage and Lancaster P&DCs only process parcels, yet may receive a proportionally small number of letters due to having a Postal retail area co-located with the facility. The Harrisburg P&DC processes letters and parcels.

## SUBJECT:

[(b)(6); (b)(7)(C)] Highway Contract Route (HCR) driver for Eagle Express Lines. (Eagle Express Lines).

Pennsylvania Criminal Intelligence Center (PaCIC) Biographical Data <u>Sheet (Exhibit 1)</u>.

Springettsburgy Township Police Department (PD) incident reports for [(b)(6); (b)(7)(C)] (Exhibit 2).

- [(b)(6); (b)(7)(C)]
- Residence: [(b)(6); (b)(7)(C)]
- Cellular Number: [(b)(6); (b)(7)(C)]

## IV.    DETAILS

On December 1, 2020, during an Amistad Project press conference, [(b)(6); (b)(7)(C)] stated that on October 21, 2020, he observed completed ballots being loaded onto his trailer in Bethpage, NY. According to [(b)(6); (b)(7)(C)] these ballots had handwriting on the outside of them. [(b)(6); (b)(7)(C)] stated he utilized a specific trailer ID [(b)(3) 39 USC] to transport the mail that day to processing plants in Harrisburg and Lancaster. After arriving at the Harrisburg P&DC, [(b)(6); (b)(7)(C)] stated he had to wait in the parking lot for approximately six hours without his trailer being unloaded. [(b)(6); (b)(7)(C)] stated he was then instructed by a Postal transportation supervisor to leave Harrisburg, without being unloaded, and go to his next and final stop, Lancaster. When he arrived at Lancaster, he dropped his trailer and left for the day. When [(b)(6); (b)(7)(C)] arrived for work the next day to pick up the trailer, he stated the aforementioned trailer was missing [(b)(3) 39 USC].

Continuing on the same date, case agents were made aware [(b)(6); (b)(7)(C)] completed and swore to an affidavit on November 26, 2020, to [(b)(6); (b)(7)(C)] private investigator (<u>Exhibit 3</u>) In the affidavit, [(b)(6); (b)(7)(C)] stated there were approximately 24 gaylords, measuring approximately 4ft by 5ft each, and were destined for Harrisburg. He stated there were two additional gaylords loaded in the nose of the trailer destined for Lancaster. [(b)(6); (b)(7)(C)] could not estimate how many ballots were in the gaylords going to Harrisburg but said it could have been 250 to 7,500. Note: [(b)(6); (b)(7)(C)] claimed through social media

Page 6

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

and press releases that his trailer (b)(3):39 USC 410 (c)(2)) contained approximately 250,000 to 300,000 ballots.

On December 02, 2020, numerous Postal employees were interviewed at the Harrisburg P&DC to include the following (Exhibit 4):

- Harrisburg P&DC (b)(6); (b)(7)(C)
- Central PA District (b)(6); (b)(7)(C)
- (b)(6); (b)(7)(C)
- 
- 

All of the aforementioned employees, which include high level management, could not corroborate (b)(6); (b)(7)(C) claim of 250 to 7,500 ballots transported on trailer ID (b)(3):39 USC A review of USPS databases showed that (b)(6); (b)(7)(C) did not use trailer ID (b)(3):39 USC 410 (c)(2) on October 20th or 21st. (b)(6); (b)(7)(C) used trailer ID (b)(3):39 USC 410 Additionally, USPS data reported the gaylords (mail) that (b)(6); (b)(7)(C) did not deliver to Harrisburg, were eventually off-loaded and scanned in Lancaster on October 21st. The Lancaster-bound gaylords were processed locally while the gaylords intended for Harrisburg were sent back to Harrisburg on new trailer ID (b)(3):39 Postal Fleet Services is the contracting company that manages trailer ID (b)(3):39 USC and operates an evening route between Lancaster and Harrisburg daily.

Continuing on the same date, USPS Surface Transport Operations provided GPS information pertaining to trailer ID (b)(3):39 USC 410 on October 21st (Exhibit 5). The GPS information provided corroborates with (b)(6); (b)(7)(C) timeline.

Continuing on the same date, the OIG and IS interviewed USPS (b)(6); (b)(7)(C)
(b)(6); (b)(7)(C)

On December 03, 2020, the OIG attempted to contact (b)(6); (b)(7)(C) to schedule an interview. All attempts failed.

Continuing on the same date, the OIG and IS interviewed USPS (b)(6); (b)(7)(C)
(b)(6); (b)(7)(C)

Page 7

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

(b)(6); (b)(7)(C)

Continuing on the same date, the OIG and IS interviewed USPS (b)(6); (b)(7)(C)

(b)(6), (b)(7)(C)

Continuing on the same date, the OIG interviewed (b)(6); (b)(7)(C)

(b)(6); (b)(7)(C)

Continuing on the same date, the USPS-OIG, North East Area Field Office (NEAFO), interviewed several Postal employees that work at the Bethpage, NY P&DC.  All Postal employees, which include (b)(6); (b)(7)(C) could not corroborate (b)(6); (b)(7)(C) claim of ballots being located in the gaylords.  All employees explained they only saw a handful of ballots the whole election season.

- (b)(6), (b)(7)(C)
-
-
-
-

Continuing on the same date, Lancaster P&DC (b)(6); (b)(7)(C) provided the election mail log for their facility (Exhibit 15).  This log contains two types of election mail, Political Campaign Mail (PCM) and Official Election Mail (OEM).  PCM are considered political advertisements (not ballots) and OEM include ballots.  The aforementioned log contains an entry for OEM mail received by Lancaster's local Bulk Mail Entry Unit (BMEU).  The BMEU mail intake is separate from the trailer operations.  The log contains one (1) OEM entry for October 21st for the, "Camden, Co Board of Elec," for 46,233 mail pieces, at listed time, "2:00."  A review of the log suggests the time would have been 2:00 a.m.  "Camden, Co Board of Elec," when researched online, report back to the Camden County, NJ BOE.

Page 8

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General.  This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General.  Unauthorized release may result in criminal prosecution.

Continuing on the same date, the OIG obtained copies of the Election Mail Log from the Harrisburg P&DC (Exhibit 16). None of the entries, specifically the volume of mail recorded on October 21st or 22nd, correspond with [(b)(6); (b)(7)(C)] allegation.

On December 04, 2020, investigators attempted to contact [(b)(6); (b)(7)(C)] to schedule an interview via phone and text. All attempts failed.

Continuing on the same date, the OIG was contacted by [(b)(6); (b)(7)(C)] Eagle Express Lanes, [(b)(6); (b)(7)(C)] He indicated [(b)(6); (b)(7)(C)] cell phone number is [(b)(6); (b)(7)(C)] and [(b)(6); (b)(7)(C)] It was explained [(b)(6); (b)(7)(C)] has not worked since November 22nd.

Continuing on the same date, the OIG attempted to contact [(b)(6); (b)(7)(C)] All attempts failed. [(b)(6), (b)(7)(C)] is the private investigator [(b)(6); (b)(7)(C)] utilized to swear his affidavit.

Continuing on the same date, the OIG contacted [(b)(6); (b)(7)(C)] special council for the Thomas More Society, and asked if [(b)(6); (b)(7)(C)] had legal representation. [(b)(6), (b)(7)(C)] indicated he would get back with investigators at a later time and indicated [(b)(6); (b)(7)(C)] Director of the Amistad Project, may contact them.

Continuing on the same date, the FBI spoke with [(b)(6); (b)(7)(C)] President of the London Center for Policy Research, regarding a possible meeting/interview with [(b)(6), (b)(7)(C)] (Exhibit 17). [(b)(6), (b)(7)(C)] indicated he wanted whistle-blower protection for his client and was hesitant to meet at the FBI Washington Field Office (WFO). A date and time for a potential meeting with [(b)(6); (b)(7)(C)] could not be agreed upon. [(b)(6), (b)(7)(C)] said he would talk to [(b)(6); (b)(7)(C)] the next morning around 7:30 a.m. and a meeting may be scheduled later in the day.

On December 04, 2020, [(b)(6); (b)(7)(C)] sworn affidavit was received and filed in the Commonwealth Court of PA.

On December 5, 2020, agents from the OIG, FBI, and USPIS, interviewed [(b)(6); (b)(7)(C)] (Exhibit 18). [(b)(6); (b)(7)(C)] attorney (telephonically) and [(b)(6), (b)(7)(C)] were present during the interview. [(b)(6); (b)(7)(C)]

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

On December 7, 2020, agents from the OIG and FBI interviewed (b)(6); (b)(7)(C)

(b)(6); (b)(7)(C)

On December 08, 2020, investigators from the OIG, IS, and FBI interviewed USPS

(b)(6), (b)(7)(C)

Continuing on same date, investigators from the OIG, IS, and FBI interviewed (b)(6); (b)(7)(C)

(b)(6), (b)(7)(C)

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

(b)(6); (b)(7)(C)

Continuing on the same date, investigators from the OIG, IS, and FBI interviewed USPS
(b)(6); (b)(7)(C)

On December 09, 2020, investigators from the OIG, IS, and FBI interviewed (b)(6); (b)(7)(C)
(b)(6); (b)(7)(C)

Continuing on the same date, Eagle Express Lanes provided GPS data for trailer ID
(b)(3):39 USC (Exhibit 26). The GPS information provided does not corroborate with
(b)(6); (b)(7)(C) allegation. Trailer ID (b)(3):39 USC departed Seminole, FL around 9:00 a.m. on
October 20, 2020. GPS data provided indicate the morning of October 21st, trailer ID
(b)(3):39 USC was in North Carolina traveling northbound to Harrisburg, PA.

Continuing on the same date, investigators from the OIG, IS, and FBI interviewed USPS
(b)(6); (b)(7)(C)

On December 11, 2020 at approximately 9:53 a.m. (b)(6); (b)(7)(C) contacted the OIG
(Exhibit 28). (b)(6); (b)(7)(C)
(b)(6); (b)(7)(C)

Continuing on the same date, the Lancaster P&DC (b) (3)( ) (7)(
confirmed they have not received any reports of lost, stolen, or compromised trailers

Page 11

This report is furnished on an official need to know basis and must be protected from
dissemination which may compromise the best interests of the U.S. Postal Service Office of
Inspector General. This report shall not be released in response to a Freedom of Information
Act or Privacy Act request or disseminated to other parties without prior consultation with the
Office of Inspector General. Unauthorized release may result in criminal prosecution.

within the last sixty (60) days. According to [(b)(6); (b)(7)(C)] all of their trailers are accounted for and a complete, "Yard," check is completed every eight (8) hours. The yard is the parking lot area for the tractor trailers.

Continuing on the same date, the OIG spoke with Eagle Express Lanes [(b)(6); (b)(7)(C)]
[(b)(6); (b)(7)(C)]

Continuing on the same date, the OIG spoke with [(b)(6); (b)(7)(C)] council for Phoenix Graphics Inc. (Exhibit 30). [(b)(6);] explained Phoenix Graphics was a subcontractor for another printing company named ES&S. They provided four hundred and fifty thousand (450,000) ballots to ES&S for the Philadelphia Board of Elections (BOE). Phoenix Graphics Inc., held the sole contract for Chester County, PA BOE, and provided them two hundred thousand (200,000). [(b)(6);] explained, but could not confirm, the ballots for both PA BOEs where most likely delivered to those respective locations by their delivery trucks, or entered in the mail stream locally in Rochester, NY. [(b)(6);] said his client's ballots should not have been associated with the Bethpage, NY allegation. [(b)(6);] indicated he would contact his client and confirm the transportation of ballots at a later time.

On December 15, 2020, the OIG and IS interviewed USPS [(b)(6); (b)(7)(C)] (Exhibit 31). [(b)(6); (b)(7)(C)]
[(b)(6), (b)(7)(C)]

Continuing on the same date, [(b)(6); (b)(7)(C)]
[(b)(6); (b)(7)(C)]

Continuing on the same date, the OIG and IS interviewed USPS [(b)(6); (b)(7)(C)]
[(b)(6); (b)(7)(C)]
[(b)(6); (b)(7)(C)]

Continuing on the same date, the IS interviewed USPS [(b)(6); (b)(7)(C)]
[(b)(6); (b)(7)(C)]

Page 12

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

(b)(6); (b)(7)(C)

On December 16, 2020, the OIG interviewed USPS (b)(6), (b)(7)(C)

(b)(6); (b)(7)(C)

On December 18, 2020, the OIG and IS finalized data associated with (b)(6); (b)(7)(C) allegations from USPS databases (Exhibit 35). For simplicity, a visual representation of this data was created (Exhibit 36). The OIG utilized a data-mining analyst to obtain and confirm the data from two Postal databases, the (b)(3) 39 USC 410 (c)(2); (b)(7)(C); (b)(7)(E) and (b)(3) 39 USC 410 (c)(2); (b)(7)(C); (b)(7)(E) are repositories for scanner data captured at various places throughout the USPS transportation network. The data obtained represents the following:

- (b)(6); (b)(7)(C) transported mail on 14 days in October 2020. Over the course of those 14 days he utilized 6 different trailers. **(See (b)(6), (b)(7)(C) Trailers Tab – Exhibit 35 )**

- On October 21, 2020 (b)(6); (b)(7)(C) utilized trailer ID (b)(6); (b)(7)(C) He departed the Lancaster P&DC at approximately 1:00 a.m. and drove to Bethpage, NY; arriving at approximately 4:18 a.m. At the Bethpage P&DC his trailer was unloaded. The trailer was then loaded with fourteen (14) 4FT Gaylords destined for the Lancaster P&DC, followed by twelve (12) 4FT Gaylords destined for the Harrisburg P&DC. The trailer was sealed at approximately 5:30 a.m. and (b)(6); (b)(7)(C) departed for Harrisburg, PA. There is no scan data available for the arrival/departure or loading/unloading at the Harrisburg P&DC because (b)(6); (b)(7)(C) never docked (unloaded) his trailer. (b)(6); (b)(7)(C) arrived to the Lancaster P&DC at approximately 4:15 p.m. The seal on the trailer matched the seal put on in Bethpage, NY. In order to access the mail destined for Lancaster, the 12 Gaylords destined for Harrisburg had to be removed from trailer (b)(3) 39 USC 410 Those same 12 Gaylords were then placed onto trailer (b)(3) 39 USC 410 Trailer (b)(3) 39 USC 410 departed the Lancaster P&DC at approximately 7:58 p.m. on October 21. It was driven by Postal Fleet Services (b)(6); (b)(7)(C) (b)(6), (b)(7)(C) arrived in Harrisburg at approximately 9:22 p.m. The trailer, including the 12 Gaylords originally loaded in Bethpage, was unloaded in Harrisburg around 9:00 a.m. on October 22. On October 21, trailer ID (b)(3) 39 USC was enroute to Harrisburg, PA from Seminole, FL, and had a final destination of Philadelphia, PA. **(Combination of Trl Scan Tab and Container Tab – Exhibit 35)**

- OIG analysts conducted an examination of a sampling of the parcels associated with the Gaylords loaded on (b)(3) 39 USC 410 in Bethpage on October 21. Data and images captured by USPS mail processing equipment indicates the Gaylords contained

Page 13

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

Priority Mail Parcels. **(Parcel Scan Data - Exhibit 35)**. This review did not reveal the presence of first class mail or ballots.

- Based upon information captured by various USPS scanners, Investigators were able to identify eleven (11) individuals who had contact with the containers placed onto [(b)(6); (b)(7)(C)] trailer at Bethpage, NY on October 21. **(See Contact with Containers – Exhibit 35)**

- According to USPS [(b)(3) 39 USC 410 (c)(2); (b)(7)(C); (b)(7)(E)] [(b)(6); (b)(7)(C)] was issued a USPS ID badge from the Harrisburg P&DC on October 9, 2019. A query of the system was conducted route [(b)(6); (b)(7)(C)] assigned badge for the time period of October 20 – 22. [(b)(6); (b)(7)(C)] arrived to the HARRISBURG P&DC at approximately 9:12 a.m. on October 21 and swiped into the gate at the truck entrance. There are then several swipes into and out of the building between 2:44 p.m. and 2:54 p.m. [(b)(6); (b)(7)(C)] departed for Lancaster sometime after his last swipe out of the building at 2:54 p.m. **(See Badge Swipe Tab – Exhibit 35)**

On December 23, 2020, the FBI and IS contacted [(b)(6); (b)(7)(C)] to clarify the purpose of a form 5500 (Contract Route Irregularity Report) and the meaning of a, [(b)(3) 39 USC] entered by [(b)(6),]. This [(b)(3) 39] was referenced in the transportation record for trailer ID [(b)(3) 39 USC 410] on October 21st [(b)(6),] explained code 3 indicates an omitted trip which would be common in this case since [(b)(6); (b)(7)(C)] trailer never docked in Harrisburg. [(b)(6), (b)(7)(C)] does not recall entering the code or conversing with [(b)(6); (b)(7)(C)] explained based upon the unusually high volume of activity this Fall, and the equally high number of late trailers, he wouldn't be able to recall a specific event from October.

Continuing on the same date, the OIG reviewed the election mail log from Bethpage (Exhibit 37). OIG, NEAFO SAs obtained a copy of the entire election mail log provided by Postal management. Note: this log differs from Lancaster and Harrisburg, containing images of the election mail itself rather than a summary log. Bethpage's log contained approximately one-hundred and fifty (150) images of ballots for the entire election season. NEAFO SAs also provided a copy of the contract route vehicle record given to [(b)(6); (b)(7)(C)] when he left Bethpage on the 21st (Exhibit 38). This record matches the record obtained by investigators on December 3rd in Lancaster.

## V. EXHIBITS

1. EX1-OD-[(b)(6); (b)(7)(C)] - PACIC REPORT.pdf
2. EX2-OD-Springettsburgy Township Police incident reports Jan 2013 - Dec 2020-COMBINED.pdf

Page 14



RESTRICTED INFORMATION    This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

3. EX3-OD-AFFIDAVIT [(b)(6); (b)(7)(C)] FROM COMMONWEALTH COURT OF PA RECEIVED ON 12.04.2020 .pdf
4. EX4-MOI-HBG P&DC POSTAL MGMT-Unknown_LANCASTER_17604-1.pdf
5. EX5-OD-GPS MOVEMENT FOR TRAILER ID 10R750198 - 10.21.2020.xls
6. EX6-MOI-[(b)(6); (b)(7)(C)]-MAIL HANDLER LANCASTER-Unknown_LANCASTER_17604-12.03.20.pdf
7. EX7-MOI-[(b)(6); (b)(7)(C)]-HARRISBURG-Unknown_LANCASTER_17604-12.03.20.pdf
8. EX8-MOI-[(b)(6); (b)(7)(C)]Unknown_LANCASTER_17604-12.03.20.pdf
9. EX9-MOI-[(b)(6); (b)(7)(C)] Unknown_LANCASTER_17604-12.03.20.pdf
10. EX10-OD-MOI-[(b)(6); (b)(7)(C)]Unknown_LANCASTER_17604-12.03.20.pdf
11. EX11-OD-MOI-[(b)(6); (b)(7)(C)]Unknown_LANCASTER_17604-12.03.20.pdf
12. EX12-OD-MOI-[(b)(6); (b)(7)(C)]Unknown_LANCASTER_17604-12.03.20.pdf
13. EX13-OD-MOI-[(b)(6); (b)(7)(C)]Unknown_LANCASTER_17604-12.02.20.pdf
14. EX14-OD-MOI-[(b)(6); (b)(7)(C)]Unknown_LANCASTER_17604-12.03.20.pdf
15. EX15-OD-LANCASTER- ELCTION MAIL LOG.pdf
16. EX16-OD-HBG ELCTION MAIL LOG.pdf
17. EX17-OD-MOI-[(b)(6); (b)(7)(C)]12.04.20.pdf
18. EX18-MOI-[(b)(6); (b)(7)(C)]Unknown_LANCASTER_17604 - 12.05.2020.docx
19. EX19-OD-[(b)(6); (b)(7)(C)]IMAGES FROM INTERVIEW.pdf
20. EX20-MOI-[(b)(6); (b)(7)(C)]Unknown_LANCASTER_17604 - 12.07.2020.docx
21. EX21-OD-COMPLAINT FROM [(b)(6); (b)(7)(C)]VOICEMAIL.mp3
22. EX22-OD-MOI-[(b)(6); (b)(7)(C)]HARRISBURG-Unknown_LANCASTER_17604-12.08.20.pdf
23. EX23-OD-MOI-[(b)(6); (b)(7)(C)]- INTERVIEW - COMBINED - 12.08.2020.pdf
24. EX24-MOI-[(b)(6); (b)(7)(C)]Unknown_LANCASTER_17604-12.08.2020.pdf
25. EX25-OD-MOI-[(b)(6); (b)(7)(C)]second_interview
26. EX26-OD-MAP OF GPS CORDINATES FOR 10R1440 10.21-22.2020-[(b)(6); (b)(7)(C)]Highway Contract Carrier_LANCASTER_17604.pdf
27. EX27-OD-MOI-[(b)(6); (b)(7)(C)]12.09.20.pdf
28. EX28-MOA-[(b)(6); (b)(7)(C)]Highway Contract Carrier_LANCASTER_17604 - 12.11.2020.pdf
29. EX29-MOI-[(b)(6); (b)(7)(C)]-Unknown_LANCASTER_17604-12.11.20.pdf

Page 15

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

30. EX30-MOI-[(b)(6), (b)(7)(C)]-PHOENIX GRAPHICS-Unknown_LANCASTER_17604-12.11.20.pdf
31. EX31-MOI-[(b)(6); (b)(7)(C)]-Unknown_LANCASTER_17604-12.15.20.pdf
32. EX32-MOI-[(b)(6); (b)(7)(C)]-Unknown_LANCASTER_17604-12.15.20.pdf
33. EX33-OD-MOI-[(b)(6); (b)(7)(C)]-LANCASTER.pdf
34. EX34-OD-MOI-[(b)(6); (b)(7)(C)]-Unknown_LANCASTER_17604-12.16.20.pdf
35. EX35-OD-[(b)(6); (b)(7)(C)]-Data-FINAL.xlsx
36. EX36-OD-[(b)(6); (b)(7)(C)]-route 10212020.pptx
37. EX37-OD-ELECTION MAIL LOG FROM BETHPAGE NY-CONSOLIDATED 2.pdf
38. EX38-OD-PS5398-A-CONTRACT ROUTE VEHICLE RECORD FROM BETHPAGE, NY-10.21.2020-0530HRS.pdf

Page 16

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.