IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | |
|---|---|
| **Brian R. Della Rocca** | ) |
| | ) |
| Plaintiffs, | ) CIVIL ACTION |
| | ) |
| v. | ) CASE NO. 1:24-cv-02442 (DLB) |
| | ) |
| **Susan C. Lee**, *et. al.* | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S REPLY TO DEFENDANTS' JOINT RESPONSE
IN OPPOSITION TO PLAINTIFF'S MOTION FOR A
<u>PRELIMINARY INJUNCTION</u>**

Plaintiff **Brian R. Della Rocca** ("Plaintiff") hereby replies to the joint response in opposition to the Plaintiff's Motion for a Preliminary Injunction filed by the Defendants Susan C. Lee, Secretary of State of Maryland (the "Secretary"), and Michael G. Summers, Chairperson of the Maryland State Board of Elections (the "Chairperson") (ECF 42).

## INTRODUCTION

Defendants' arguments essentially redirect the Court's attention away from the gravamen of plaintiff's complaint. Plaintiff's complaint has plausibly identified a fundamental violation of one of his fundamental rights, namely his right to election integrity. More specifically, plaintiff's complaint plausibly shows that voting by mail-in ballots is an error-laden "hit or miss" proposition. "Hit or miss," however, does not satisfy the required Constitutional standard.

Defendants rely heavily on standing doctrine to bar a focus on the fundamental issues plaintiff's complaint raises. Defendants' standing arguments, however, stripped to their stark

essentials, mean that these fundamental issues must remain forever immune to legal redress. This cannot and should not be, and is not consistent with the basic purpose of standing doctrine.

Defendants also invoke laches as a means to prevent this Court from addressing the merits of plaintiff's complaint. Laches doctrine, however, is a poor fit in the circumstances of this case, in which the plaintiff is asking the Defendants to do what they have always had an obligation to do as public stewards. Moreover, although perhaps in an ideal world plaintiff's complaint would have been filed earlier, this does not mean that the remedies plaintiff seeks should be disregarded altogether, where even a partial enforcement is not untimely.

## ARGUMENT

**I.     Maryland Voting**

Defendants seem to argue that because Maryland does not compel voters to vote by mail, the Maryland General Assembly has provided a "suitable enactment" of a framework for voters to "vote by absentee ballot," *Md. Const. Art. I § 3(a)*, then Maryland's use of universal absentee voting cannot possibly violate the Constitution of the United States of America. Defendants also argue that, because an absentee voter can "track the status of their absentee ballot" online, absentee voters have a way to confirm that their vote was counted and, alternatively, have a way to seek redress if their ballot is not received. Neither of these "points" address the constitutional implications of Plaintiff's argument.

**A.     "Suitable" Framework**

The Maryland constitutional amendment that enacted absentee voting in Maryland was approved by voters in the November 1954 election. At that time, the amendment created the "Elective Franchise" for "voting by qualified voters of the State of Maryland who are absent at

the time of any election." *See* Chapter 480 of 1954.[1]  In the 1956 election, a constitutional amendment was approved by voters expanding absentee voting to voters with a physical disability. *See* Chapter 100 of 1956.[2] In the 1974 election, Maryland voters approved the constitutional amendment in force today allowing the General Assembly to provide a means for voters who are unable to "vote personally" to vote in an election. *See* Chapter 881 of 1974.[3]

Mail-in voters in Maryland are expected to place their ballot into the mail for delivery to the local board of elections by the United States Postal Service ("USPS"). Essentially, the State of Maryland has the authority (the duty) to regulate federal elections for its citizens yet is ceding part of that authority (i.e., the chain of custody of the mail-in ballots) to a federal executive agency, the USPS. The fact that voters have other options available to them to cast their votes does not diminish the constitutional implications of mail-in voting in Maryland. The mere fact that a mail-in ballot can be lost by a federal executive agency without the voter knowing it has been lost implicates the voter's constitutional right to vote.

In 2008, a constitutional amendment was approved by Maryland voters allowing for early voting in Maryland. *See* Chapter 513 of 2007.[4] This amendment allows voting to begin two weeks prior to election day.  Arguably, this significantly reduces the need by Maryland voters to utilize absentee voting unless a voter is absent from his/her voting district for an extended period (i.e., military personnel) or is disabled.

B. **Mail-In Ballot Tracking**

Defendants' argument that voters can track the status of their mail-in ballot and can complete a provisional ballot misses the point.  Mail-in ballots must be postmarked by election

---

[1] https://msa.maryland.gov/megafile/msa/speccol/sc2900/sc2908/000001/000380/html/am380--313.html
[2] https://msa.maryland.gov/megafile/msa/speccol/sc2900/sc2908/000001/000380/html/am380--361.html
[3] https://msa.maryland.gov/megafile/msa/speccol/sc2900/sc2908/000001/000380/html/am380--523.html
[4] https://msa.maryland.gov/megafile/msa/speccol/sc2900/sc2908/000001/000803/html/am803--3367.html

day and must be received by the Board of Elections by November 15, 2024. Voters can "track the status" of their mail-in ballot to determine when (if) the ballot has been received and whether that ballot has been counted. However, a Maryland voter would have to actively watch to ensure his/her vote was received and counted and, if a concern exists, would have to go to a polling place to submit a provisional ballot.

The reality is that a voter is likely to believe his/her vote is complete when the ballot is placed in the mail. Even if a voter actively monitors his/her mail-in ballot, the ballot can be counted if received by November 15, 2024, 10 days after voting ended. At that point, if the voter is monitoring the website hoping the vote will be received and it is not, the voter has no redress. That voter has been disenfranchised in violation of his/her constitutional right to vote.

However, that belies Plaintiff's point. Once the mail-in ballot is placed into the mail, no one can monitor it, not the voter, not the State of Maryland, not even the USPS. Despite having procedures in place on how to properly handle mail-in ballots, the facts presented in Plaintiff's filings show that the procedures are largely ignored.

### C.    Other Options for Delivery of Mail-In Ballots

As the Defendants correctly point out, voters have other options available to them to cast their ballot so granting the Plaintiff's request will not deprive any Maryland voter of his/her right to vote. The alleged "widespread confusion" that Defendants' assert will be caused by the granting of the Plaintiff's motion is not a valid reason for a court to ignore the constitutional implications of Plaintiff's argument.

## II.    Laches

"Laches is an equitable doctrine that can be raised by a defendant as an affirmative defense to a claim and requires that the defendant show '(1) lack of diligence by the party against

whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Dann Ocean Towing, Inc.*, 756 F.3d 314, 318 (4th Cir. 2014).

The doctrine of laches in its conclusive effect is "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348-349 (1944). As such, the doctrine of laches in its historical sense was developed to promote justice, not injustice.

The Defendants are already required by law to protect the rights of voters, and the Plaintiff is merely trying to compel them to enforce the law. The doctrine of laches should, therefore, be inapplicable.

Defendants cite *Voters Organized for the Integrity of Elec. v. Baltimore City Elec. Bd.*, 214 F. Supp. 3d 448 (D. Md. 2016), to support their argument that the doctrine of laches should apply. However, that case can be distinguished from this case in that, in *Voters Organized*, the primary election would have to be held again, causing significant disruption in the required deadlines for the creation and distributing of absentee ballots. That is not the case here. The Defendants themselves cited the alternative options voters have in Maryland to cast their votes if this Court grants the Plaintiff's motion for preliminary injunction barring the use of the USPS to deliver mail-in ballots.

Further, the Plaintiff has acted diligently in asserting his claims. He has conducted an investigation for years which included requests to the USPS pursuant to the Freedom of Information Act, one of which is in ongoing litigation due to the USPS's failure to provide records to the Plaintiff. *See Della Rocca v. United States Postal Service* (Md. Dist. Ct., Case No.

1:22-cv-0786 (DLF)) ("FOIA Case"). Plaintiff has been trying for years to get the USPS to comply with his request for records but, as a result of the refusal to provide records by the USPS, has been tied up in litigation. Plaintiff proceeded with this case with the information he had accumulated to date.

In fact, contrary to Defendants' assertions in Footnote 5 of the Opposition, the Office of the Inspector General ("OIG") to which Defendants refer, which was included in Plaintiff's complaint, did not actually "debunk" all of the allegations made about ballots being misdelivered in Bethpage, New York. As pointed out in Paragraph 33 of the complaint, in response to Plaintiff's inquiry about why the information used for the report was not disclosed to Plaintiff, USPS counsel told Plaintiff that the OIG "backed into" the numbers. This assertion clearly indicates that, while the report seemingly "debunks" the claims the OIG was investigating, in reality, the OIG did not have any actual information to support this assertion. The information eventually provided to Plaintiff in the FOIA Case that allegedly supported the OIG's conclusion was, in reality, inconclusive. In reality, the "evidence" used to create the report, coupled with the USPS counsel statement, debunked the report issued by the OIG.

Additionally, Plaintiff filed the present Motion for Preliminary Injunction based on information procured subsequent to the filing of his complaint. As identified in the Plaintiff's motion, on September 11, 2024, a combined letter from the National Association of Secretaries of State and National Association of State Election Directors was issued expressing concern that the poor performance of the USPS have "raised serious questions about processing facility operations, lost or delayed election mail, and front-line training deficiencies impacting the USPS's ability to deliver election mail in a timely and accurate manner." *See* Plaintiff's Motion for Preliminary Injunction, Exhibit A (ECF 22).

Further, as a result of the filing of Plaintiff's complaint, Plaintiff was contacted by Mr. Frederick J. Morin, a former Postmaster at the USPS, who attested that the USPS cannot guarantee that mail-in ballots will be delivered on time to the Boards of Elections or that the mail-in ballots will be delivered at all. *See* Plaintiff's Motion for Preliminary Injunction, Exhibit B (ECF 22).

### III. Entitlement to Enforce a Constitutional Right

#### A. Sovereign Immunity

Defendants claim that sovereign immunity bars the suit instituted by Plaintiff against them. In that argument, the Defendants assert an interestingly circular argument that a suit against the Secretary of State, in her official capacity, is a suit against the State of Maryland but that a suit against the chairperson of the Maryland State Board of Elections, in his official capacity, is allegedly not a suit against the State of Maryland. The Defendants take great pains to explain which agency in Maryland has authority to administer and oversee elections. Both Defendants have an important role in the elections despite Defendants' assertions to the contrary.

Qualified immunity protects government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Iko v. Shreve*, 535 F.3d 225, 237 (4th Cir. 2008). A plaintiff thus must make two showings: a violation of a constitutional right, and that that right was "clearly established" at the time of the alleged conduct. *See Pfaller v. Amonette*, 55 F.4th 436, 444 (4th Cir. 2022).

Plaintiff has clearly shown that mail-in voting violates his constitutional right to vote. The right to vote is clearly established in both the United States Constitution and the Constitution of Maryland. Therefore, sovereign immunity is inapplicable to this case.

7

## B. Injury to Plaintiff

Plaintiff has supplied significant ***factual*** evidence in his complaint and subsequent motion for preliminary injunction to support his claim that Maryland's reliance upon the USPS to deliver mail-in ballots in a timely manner (or at all) is injurious to the Plaintiff's constitutional right to vote.

Moreover, Defendants' assertion is inconsistent with the Supreme Court's holding in *Baker v. Carr,* 369 U.S. 186, 206-08 (1962), a seminal voting case:

> "We hold that the appellants do have standing to maintain this suit. Our decisions plainly support this conclusion. Many of the cases have assumed rather than articulated the premise in deciding the merits of similar claims. And *Colegrove v. Green*, supra, squarely held that voters who allege facts showing disadvantage to themselves as individuals have standing to sue. A number of cases decided after *Colegrove* recognized the standing of the voters there involved to bring those actions.
>
> These appellants seek relief in order to protect or vindicate an interest of their own, and of those similarly situated. Their constitutional claim is, in substance, that the 1901 statute constitutes arbitrary and capricious state action, offensive to the Fourteenth Amendment in its irrational disregard of the standard of apportionment prescribed by the State's Constitution or of any standard, effecting a gross disproportion of representation to voting population. The injury which appellants assert is that this classification disfavors the voters in the counties in which they reside, placing them in a position of constitutionally unjustifiable inequality vis-a -vis voters in irrationally favored counties. A citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution, when such impairment resulted from dilution by a false tally, cf. *United States v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368; or by a refusal to count votes from arbitrarily selected precincts, cf. *United States v. Mosley*, 238 U.S. 383, 35 S.Ct. 904, 59 L.Ed. 1355, or by a stuffing of the ballot box, cf. *Ex parte Siebold*, 100 U.S. 371, 25 L.Ed. 717; *United States v. Saylor*, 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341.
>
> It would not be necessary to decide whether appellants' allegations of impairment of their votes by the 1901 apportionment will, ultimately, entitle them to any relief, in order to hold that they have standing to seek it. If such impairment does produce a legally cognizable injury, they are among those who have sustained it. They are asserting 'a plain, direct and adequate interest in maintaining the effectiveness of their votes,' *Coleman v. Miller*, 307 U.S. at 438, 59 S.Ct. at p. 975 not merely a claim of 'the right possessed by every citizen 'to require that the government be administered according to law'.' *Fairchild v. Hughes*, 258 U.S. 126,

8

129, 42 S.Ct. 274, 275, 66 L.Ed. 499; compare *Leser v. Garnett*, 258 U.S. 130, 42 S.Ct. 217, 66 L.Ed. 505. They are entitled to a hearing and to the District Court's decision on their claims. 'The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury.' *Marbury v. Madison*, 1 Cranch 137, 163, 2 L.Ed. 60.

Further, the United States Supreme Court has identified the equal protection clause as the basis for judicial resolution of constitutional claims – including voting rights claims. *See Alexander v. S.C. State Conference of the NAACP*, 602 U.S. 1, 53, 144 S. Ct. 1221, 1260 (2024).

Plaintiff has clearly identified a constitutional injury through the use of the USPS to deliver mail-in ballots. Any harm suffered will not be known to Plaintiff until after it is too late. The framers of the Constitution surely would not have agreed to such a result. Defendants seem to believe this harm lacks recourse as, by the time Plaintiff is made aware of the injury, it would be too late. Arguing that mail-in voters should file a provisional ballot in addition to mailing in their ballot places additional restraints on voters, thereby further violating their right to vote.

Plaintiff is not asserting his claims on behalf of all Maryland voters, just himself. Plaintiff is injured by the loss of other voters' mail-in ballots as the loss of even one vote can be the loss of a candidate or issue passionately supported by the Plaintiff.

**C. Alteration of Election**

Defendants assert, with no evidence, that Plaintiff seeks to alter the election by asking the Court to "enjoin and entire system of voting in the middle of an election." Plaintiff is not asking the Court to enjoin an "entire system of voting" where there is no other option available. As noted multiple times in this Reply, voters have multiple, more reliable, ways in which they can exercise their constitutional right to vote. A voter can go to a polling place to cast his/her vote in-person or the voter can personally drop off his/her mail-in ballot at one of the numerous drop box locations throughout the State of Maryland.

9

## CONCLUSION

For the reasons stated above and in Plaintiff's motion for preliminary injunction, the Court should grant the Plaintiff's motion and order the State of Maryland to cease further use of the United States Postal Service for the delivery of mail-in ballots.

Respectfully Submitted,

*/s/ Brian R. Della Rocca*
Brian R. Della Rocca
Della Rocca Law, LLC
Bar No. 21781
9801 Washingtonian Blvd., Suite 710
Gaithersburg, MD 20878
240-455-5090 (phone)
301-740-2297 (fax)
brian@dellaroccalaw.com

*Pro Se*

## CERTIFICATE OF SERVICE

I certify that on October 24, 2024, I electronically filed the foregoing document with the Clerk of the Court via ECF, which will send electronic notification of such filing to all counsel of record.

*/s/ Brian R. Della Rocca*
Brian R. Della Rocca